UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **DANIELLE NORRIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 1:19-cv-00197-SNLJ |
| | ) |
| **AMERICAN MODERN PROPERTY** | ) |
| **AND CASUALTY INSURANCE CO.,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant American Modern Property and Casualty Insurance Company's motion for summary judgment (ECF #21). For the following reasons, American Modern's motion is **DENIED**.

**I. BACKGROUND**

American Modern is the insurer of plaintiff Daniel Norris's home under a homeowner's policy, No. 100020691. This case involves the burning down of Norris's home by a co-insured—her adoptive father—John Fiske. After Norris's mother died, Fiske "moved out of the subject property" and began repeatedly threatening Norris and her children, so much so that she filed a victim statement with the Shannon County Sheriff's Department just weeks before the fire occurred. Fiske pled guilty to second-degree arson and second-degree burglary, having intentionally "poured tiki torch oil in the kitchen" and lighting "a piece of paper on fire [that] ignited the tiki oil." The parties agree that Norris took no part in the burning down of her home. Nonetheless, American

1

Modern denied coverage to Norris arguing the policy's "intentional-acts exclusion" and/or "criminal-acts exclusion" applied to Fiske's conduct. American Modern now moves for summary judgment on that theory.

## II. ANALYSIS

### A. The Relevant Insurance Policy, Its Exclusionary Terms, and Missouri's "Innocent Co-Insured" Statute.

As stated, the insurance policy at issue in this case contains two relevant exclusions: a criminal-acts exclusion and an intentional-acts exclusion. American Modern denied coverage to Norris under both. The language of these exclusions follows:

> **SECTION I – EXCLUSIONS**
> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> …
>
> **8. Intentional Loss**, meaning any loss arising out of any act committed:
>   **a.** by or at the direction of an **insured**, and
>   **b.** with the intent to cause a loss.
>
> …
>
> **10. Criminal Acts**, meaning any loss that results from the **criminal acts** of any insured, including tenants and/or their relatives, on the **residence premises**.

Despite denying coverage under both exclusions, American Modern takes pains to emphasize it is moving for summary judgment solely under the criminal-acts exclusion—apparently for strategic reasons, as will be explained.

2

Norris says this case, whatever exclusion that is to be considered, ultimately comes down to Missouri's "innocent co-insured" statute, § 375.1312 RSMo. She emphasizes that she "did not commit, conspire to commit, cooperate in, or in any way contribute to the creation of the loss [of her house]." Section 375.1312.5 provides:

> If an innocent coinsured files a police report and completes a sworn affidavit for the insurer that indicates both the cause of the loss and a pledge to cooperate in any criminal prosecution of the person committing the act causing the loss, ***then no insurer shall deny payment to an innocent coinsured on a property loss claim due to any policy provision that excludes coverage for intentional acts.***

(emphasis added). While the parties agree that Norris took no part in the burning down of her house, American Modern says Norris does not meet the statutory definition of an "innocent co-insured." The statute provides a rather unique and limited definition based on whether "the loss arose out of a pattern of domestic violence." § 375.1312.1(2), RSMo. Whether a "pattern of domestic violence" is, indeed, at play involves a fact-intensive inquiry about whether Norris suffered "abuse or stalking" such that she was in "substantial emotional distress" and/or "fear of danger of physical harm" through a "pattern of … unwanted communication or unwanted contact." §§ 375.1312.1(2); 455.010(1)(d), (5), (14)(a)-(b).

The parties do little to establish, as a factual matter, that Norris was "abused" or "stalked" as understood (and limited) by the relevant statutory framework. American Modern says that's because Norris loses the "innocent co-insured" argument on another, overriding ground, which is that Section 375.1312 simply does not apply to the criminal-acts exclusion at issue. "Norris's status as an 'innocent co-insured' is only applicable to

3

policy provisions that 'exclude[] coverage for intentional acts,'" it says. Indeed, American Modern concedes that the intentional-acts exclusion likely runs afoul of Section 375.1312. However, American Modern reminds the Court that it "denied Norris's claim under *both* the intentional-acts exclusion and the criminal-acts exclusion," only the latter of which is at play in American Modern's motion for summary judgment. In any event, the question of Section 375.1312.5's scope is one of first impression in Missouri.

### B. The "Innocent Co-Insured" Statute's Application to Arson.

At the onset, there is reason for concern about American Modern's argument, which focuses on the closing words of the innocent co-insured statute but seemingly ignores on-point language coming just before:

> If an innocent coinsured ***files a police report*** and ***completes a sworn affidavit for the insurer that indicates both the cause of the loss and a pledge to cooperate in any criminal prosecution*** of the person committing the act causing the loss, then no insurer shall deny payment … ***due to any policy provision that excludes coverage for intentional acts***.

§ 375.13.12.5, RSMo (emphasis added). Though concluding with a reference to exclusions "for intentional acts," the statute clearly envisions criminal misconduct as an animating feature—why else talk about "police reports" and "a pledge to cooperate in any criminal prosecution?"

This is no concern, says American Modern, because the Eighth Circuit has weighed in on this issue, or at least the issue of American Modern's policy. "If a policy has separate exclusions for criminal and intentional acts, courts interpret the two as entirely separate, and the intent requirement does not extend to the criminal-acts exclusion." *Progressive Northern Ins. Co. v. McDonough*, 608 F.3d 388, 391 (8th Cir.

4

2010) (citing *SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 325 (Minn. App. 2008)). Based on this language, American Modern concludes "the criminal-acts exclusion is not a policy provision that excludes coverage for intentional acts" and, thus, it does not come under the purview of Section 375.1312.5.

This Court disagrees. First, *Progressive Northern* is immediately distinguishable for multiple reasons—it applied Minnesota law, not Missouri law, and it was interpreting common law, not Missouri's express statutory framework. *Progressive Northern* says absolutely nothing about Section 375.1312, so its discussion is a bit of a red herring beyond explaining basic principles of contract interpretation. More importantly though, *Progressive Northern* does not say what American Modern says it does.

The Eighth Circuit was not excising intentional conduct from the criminal-acts exclusion, it said only that the "***intent requirement*** does not ***extend*** to the criminal-acts exclusion." *Progressive Northern*, 608 F.3d at 391. In plain terms, intentionality is not an express element of the criminal-acts exclusion—as it would be with the intentional-acts exclusion—and, therefore, misconduct need not be proven intentional in order for the criminal-acts exclusion to apply. This conclusion is made apparent in the underlying case to which the Eighth Circuit cites. In *SECURA Supreme Ins. Co*, the Minnesota Court of Appeals explained that "a criminal-act exclusion in an insurance policy is not ***limited to criminal acts involving a perpetrator's intent to harm*** the victim. Instead, such exclusions ***extend to criminal acts causing injury even when the perpetrator possessed no specific intent to injure*** the victim." 755 N.W.2d at 325 (emphasis added). It further noted "[t]his interpretation is consistent with the majority of courts in other jurisdictions

5

that have considered this question"—all taking a broad view of "criminal acts" to include *both* intentional *and* unintentional conduct (e.g. criminal recklessness). *Id.* (citing *Allstate Ins. Co. v. Brown*, 16 F.3d 222, 226 (7th Cir. 1994), *Hooper v. Allstate Ins. Co.*, 571 So.2d 1001, 1003 (Ala. 1990), *Allstate Ins. Co. v. Schmitt*, 570 A.2d 488, 492 (N.J. Super. 1990), *Allstate Ins. Co. v Peasley*, 932 P.2d 1244, 1249 (Wash. 1997)). The import of these cases is that the intentional-acts exclusion covers an act that is "willfully or volitionally performed," a narrower condition, while the criminal-acts exclusion covers anything that "violates the state's criminal code," a broader condition applicable to any criminal act—intentional or not. *Allstate Ins. Co.*, 16 F.3d at 225.

Missouri law is in agreement on this point, concluding that the criminal-acts exclusion applies (or not) based quite literally on whether the insurable loss results from an underlying violation of the criminal code—matters of *mens rea* aside. *See Pitt v. Leonberger*, 528 S.W.3d 1, 14 (Mo. App. E.D. 2017) (criminal-acts exclusion did not apply to wrongful death judgment where, despite driver pleading guilty to involuntary manslaughter, the judgment was based solely on civil negligence); *Am. Home Assur. Co. v. Pope*, 360 F.3d 848, 852 (8th Cir. 2004) (criminal-acts exclusion applied to misdemeanor violation for failing to report suspected abuse, but not duties derived from common law).

As the basis of the loss in this case, Fiske pled guilty to second-degree arson, which is a violation of Missouri's criminal code pursuant to § 569.050, RSMo. Second-degree arson is also an intentional crime under Missouri law. *State v. Steidley*, 533 S.W.3d 762, 769 (Mo. App. W.D. 2017); *see also* § 569.050.1 (A person commits the

6

offense of arson in the second degree if he or she ***knowingly*** damages a building or inhabitable structure by starting a fire or causing an explosion." (emphasis added)). Thus, Fiske's conduct was *both* criminal *and* intentional, obviously that is why American Modern initially chose to deny coverage under both the criminal and intentional acts exclusions. But, American Modern now attempts to decouple its criminal-acts exclusion from the purview of Missouri's statutory, intent-based innocent co-insured protections under Section 375.1312.5. Under American Modern's approach, the criminal-acts exclusion would yield the absurd result having no exclusionary effect on a criminal act such as arson simply because it was intentionally done. That argument is unavailing. The statute, envisioning an innocent insured's cooperation in "[a] criminal prosecution," broadly applies to "***any*** policy provision"—whatever its focus or label—that would have the effect of "exclud[ing] coverage for intentional acts," such as arson. § 375.1312.5, RSMo. Giving due effect to the statute and its words, American Modern's motion will be denied.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant American Modern Property and Casualty Insurance Company's motion for summary judgment (ECF #21) is **DENIED**.

So ordered this 13th day of August 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE